IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONICHA MCCANN-CROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-1431-GBW-SRF |
| | ) | |
| CORAS WELLNESS AND BEHAVIORAL HEALTH, a Delaware Limited Liability Company, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

This case arises out of the employment of *pro se* plaintiff Donicha McCann-Cross ("Plaintiff") as a Licensed Practical Nurse ("LPN") at Coras Wellness and Behavioral Health ("Defendant"), a nonprofit addiction treatment and residential drug rehabilitation facility. (D.I. 2; D.I. 60 at 155, 242)[1] Plaintiff brings claims for sex and race discrimination and a hostile work environment based on sexual and racial harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Delaware Discrimination in Employment Act ("DDEA"), and 42 U.S.C. § 1981.[2] Presently before the court is Defendant's motion for summary

[1] In this Report and Recommendation, all citations to the appendices at D.I. 60, D.I. 61-1, and D.I. 63 refer to the ECF page numbers in the upper right-hand corner of the document.

[2] Defendant states that "[t]he causes of action Plaintiff attempts to allege are unclear – the Operative Complaint contains no Counts or reference to any statutes. [Defendant] assumes Plaintiff brings claims for alleged sex discrimination, race discrimination, sexual harassment, and racial harassment, including constructive discharge, under Title VII . . . and the [DDEA]." (D.I. 59 at 1-2) Plaintiff does not directly dispute Defendant's characterization of the asserted causes of action, but she describes her "claims of a hostile work environment due to talk of sexual language, racism, sexism, gaslighting and spreading of rumors" under Title VII and 42 U.S.C. § 1981. (D.I. 61 at 1) Defendant correctly notes that Plaintiff did not list Section 1981 in her charge of discrimination or the complaint. (D.I. 61-1 at 25; D.I. 2) Nonetheless, the court liberally construes the *pro se* litigant's submissions "to avoid inappropriately stringent application of formal labeling requirements[.]" *Castro v. U.S.*, 540 U.S. 375, 381 (2003).

judgment.[3] (D.I. 58) For the following reasons, I recommend that the court GRANT Defendant's motion for summary judgment.

## I. BACKGROUND[4]

Plaintiff is a multi-racial woman who was hired as an LPN on May 23, 2022 to work at Defendant's Harrington Medication-Assisted Treatment ("MAT") clinic, dispensing medications for outpatient addiction recovery. (D.I. 61-1 at 27; D.I. 60 at 126, 241) Soon after, Plaintiff began raising complaints to her supervisor, Chief Nursing Officer Audrey Aldrich, about interpersonal disputes with other staff members. Aldrich offered Plaintiff a voluntary transfer to an equivalent position, and Plaintiff accepted the transfer. (D.I. 60 at 118, 241, ¶¶ 9-12) Plaintiff and Aldrich repeated this pattern four times over the course of Plaintiff's employment with Defendant, as set forth in the chart below. (*Id.* at 165, 168-70, 185-86)

The chart also describes specific incidents that occurred during Plaintiff's employment. The record before the court indicates that Plaintiff informally took issue with some of these incidents when they occurred, while others appear to have been raised for the first time in this litigation. There is no evidence of record to suggest that Plaintiff followed Defendant's formal grievance procedure for reporting alleged discrimination or workplace harassment by completing a written Complaint Resolution Form. (*Id.* at 48-49)

---

[3] The briefing and filings associated with the pending motion are found at D.I. 59, D.I. 60, D.I. 61, D.I. 62, and D.I. 63.

[4] The court has considered all the exhibits included in the parties' appendices. In a footnote included in Defendant's reply brief, Defendant argues that the court should not consider three exhibits included in Plaintiff's appendix because Plaintiff failed to produce those documents in discovery. (D.I. 62 at 3 n.1) The court "need not address arguments raised entirely in footnotes." *Perrong v. Liberty Power Corp., L.L.C.*, 411 F. Supp. 3d 258, 268 n.11 (D. Del. 2019). Moreover, a review of the challenged exhibits suggests that they were equally available to both sides. (D.I. 61-1 at 10-16 (July 15, 2023 Occurrence Report); *id.* at 17 (email from Plaintiff to Washington and Aldrich); *id.* at 39 (email from Plaintiff to Aldrich and Courtney Cannarella)).

| TITLE | EMPL. DATES | SUPERVISOR | INCIDENTS |
|---|---|---|---|
| Dosing LPN at Harrington MAT clinic | 5/23/2022 – 8/8/2022<br><br>(D.I. 60 at 123-25, 128) | Audrey Aldrich | - A patient made negative comments about racial minorities and accused Plaintiff of selling drugs. (D.I. 60 at 160) Plaintiff spoke to supervisor Ted Sammons about the incident, and Sammons agreed that the patient was racist. (*Id.* at 162-63) Plaintiff was not written up or accused of selling drugs by Defendant. (*Id.* at 163-64)<br><br>- An unnamed coworker advised the same patient to file a grievance against Plaintiff. (D.I. 60 at 161-64) Plaintiff did not report the coworker, and there is no evidence that the patient actually filed a grievance against Plaintiff. (*Id.*)<br><br>- In November of 2022, Plaintiff made a medication error after following instructions from nurse Kate Moore, and both Plaintiff and Moore received a disciplinary write-up. (D.I. 60 at 178; D.I. 63 at 8-11) Moore was also required to accept either a transfer or a demotion. (D.I. 63 at 3-4) |
| Residential LPN at Harrington | 8/8/2022 – 4/24/2023<br><br>(D.I. 60 at 128-29) | Audrey Aldrich<br>Ted Sammons | |
| Dosing LPN at Newark clinic | 4/24/2023 – 6/16/2023<br><br>(D.I. 60 at 129-32) | Donna Orsatti | - On one occasion, coworker Carmen Morgan described her personal sex life to Plaintiff. (D.I. 60 at 175-76) Plaintiff transferred to the Newark evening program, where she no longer had to work with Morgan. (*Id.* at 187)<br>- On two occasions, Plaintiff witnessed a |

| TITLE | EMPL. DATES | SUPERVISOR | INCIDENTS |
| --- | --- | --- | --- |
| LPN in Newark evening program | 6/16/2023 – 10/16/2023<br><br>(D.I. 60 at 132, 134) | Heather Maxion | white patient call a minority patient a racial slur. (D.I. 60 at 177, 179) Plaintiff's Delaware Department of Labor ("DDOL") charge of discrimination indicates she informed Aldrich of the first occurrence and asked if an incident report should be filed, but she received no clear answer. Plaintiff did not disclose or report the second occurrence. (D.I. 61-1 at 25)<br><br>- Plaintiff was required to complete an occurrence report on July 15, 2023 regarding a malfunctioning methadone pump. (D.I. 61-1 at 10-17)<br><br>- On July 18, 2023, Brittany Washington[5] texted Plaintiff a link to a sexually explicit Amazon listing. (D.I. 60 at 197-98) Plaintiff verbally reported the incident to Aldrich but could not recall if she showed Aldrich the text message. (*Id.* at 199-200) When Plaintiff said she planned to resign, Aldrich offered Plaintiff a voluntary transfer to another equivalent position. (*Id.* at 200) |

[5] The parties dispute whether Brittany Washington supervised Plaintiff. Plaintiff refers to Washington as her supervising nurse, and an email dated July 15, 2023 shows that Plaintiff notified both Washington and Aldrich of a methadone pump malfunction. (D.I. 2 at 3; D.I. 61 at 10; D.I. 61-1 at 17) Defendants have submitted the personnel change notices relevant to Plaintiff's employment, and there is no indication that Washington was Plaintiff's supervisor. (D.I. 60 at 126-30, 134) The question of whether Washington supervised Plaintiff is not material to Plaintiff's claims for the reasons described at Section III, *infra*.

| TITLE | EMPL. DATES | SUPERVISOR | INCIDENTS |
|---|---|---|---|
| LPN at Harrington | 10/16/2023 – 3/25/2024 (D.I. 60 at 134, 151; D.I. 61-1 at 25) | Sharronda James | - Plaintiff learned that her coworker Adam Cooke did not work on Sundays.[6] (D.I. 60 at 180) Plaintiff asked Aldrich if she was required to work on Sundays since Cooke was not. (*Id.*) Aldrich sent an email on September 12, 2023 clarifying that both Plaintiff and Cooke were required to work on Sundays. (*Id.* at 133, 183-85, 191-92) Plaintiff was never required to cover for Cooke on a Sunday shift. (*Id.* at 185)<br><br>- On December 4, 2023, Plaintiff gave a patient medication intended for another patient. Aldrich asked Plaintiff to write an occurrence report about the medication mix-up. (D.I. 60 at 180-81; D.I. 61-1 at 18) Plaintiff noted the medication cart "was a mess" when the mix-up occurred, and Plaintiff attributed responsibility for cleaning the cart to Cooke. (D.I. 60 at 180-81) Aldrich did not require Plaintiff to write the occurrence report. (*Id.* at 181; D.I. 61-1 at 25)<br><br>- Plaintiff suffered a work-related injury on December 27, 2023. (D.I. 2-1 at 16) |

Plaintiff did not return to work after her injury on December 27, 2023. (D.I. 61-1 at 42, 46) She first received medical treatment in the emergency room on January 8, 2024, almost two weeks after her injury. (*Id.* at 42) She provided documentation from the emergency room but

[6] Plaintiff testified that Adam Cooke was her coworker at the Harrington location, and the record reflects that Plaintiff returned to Harrington in mid-October of 2023. (D.I. 60 at 134, 190 at 141:20-23) However, the record reflects that Aldrich addressed Cooke's schedule in an email sent on September 12, 2023, prior to the recorded date of Plaintiff's return transfer to Harrington. (*Id.* at 133, 180 at 107:5-17) The apparent discrepancy in dates and locations is not material to the court's analysis of the substantive issues in this case.

did not submit a doctor's note addressing when she could return to work. (*Id.*) Although she was informed on multiple occasions that her absences would not be excused unless and until she submitted a work status note, Plaintiff did not submit a work note or otherwise document any follow-up treatment for her injury. (*Id.* at 42-50) Plaintiff was informed she should report to work as normal until she could provide supporting documents from her doctor. (D.I. 60 at 137-38)

On January 25, 2024, Defendant sent Plaintiff a letter invoking the company's job abandonment policy, which provides that "[e]mployees are considered to have abandoned (resigned without notice) their position if they are absent without notification for two scheduled working days" or "if they fail to report for work without notice at the starting time of their scheduled shift on the first workday following an authorized leave of absence or paid days off." (*Id.* at 30, 140) The letter stated that Plaintiff's resignation would be considered effective as of February 1, 2024 unless Plaintiff submitted a response. (*Id.* at 140) On January 26, 2024, Plaintiff responded that she timely entered her leave to receive paid time off, referencing emails she sent and received about the matter. (*Id.* at 141) There are no emails in the record before the court showing that Plaintiff timely requested and received approval for paid leave, and Plaintiff did not indicate when she planned to return to work or whether she had received additional medical treatment.

Over the ensuing days, Plaintiff sent emails raising grievances about her pay and her treatment by Defendant since being injured. (*Id.* at 142-45) These emails did not identify any instances of discrimination against Plaintiff based on her sex or her race. On January 31, 2024, Plaintiff sent an email stating that she was "being forced to resign due to the treatment [she] ha[d] received[,]" such as being required to complete an occurrence report. (*Id.* at 146) Plaintiff

complained of a lack of professionalism, gossip, and drama in the workplace. (*Id.*) On February 1, 2024, Defendant asked when Plaintiff's resignation would be effective. (*Id.* at 148) There is no record that Plaintiff responded to Defendant's February 1, 2024 inquiry.

On March 8, 2024, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DDOL"). (*Id.* at 152) Plaintiff alleged racial discrimination, harassment, and hostile work environment and stated she was constructively discharged on January 31, 2024. (*Id.*) Plaintiff cited Title VII and the DDEA as the laws applicable to her charge of discrimination. (*Id.*)

In a letter to Plaintiff dated March 25, 2024, Defendant reiterated that Plaintiff had not worked any hours since January 8, 2024. (*Id.* at 150) The letter indicated it would accept Plaintiff's resignation if she failed to respond by April 1, 2024. (*Id.*) Plaintiff did not respond to the March 25, 2024 letter, and on May 22, 2024, Defendant formally processed Plaintiff's resignation as of March 25, 2024. (*Id.* at 151)

The EEOC issued a right to sue letter to Plaintiff on September 19, 2024. (D.I. 2-2 at 1) On October 18, 2024, Plaintiff filed a civil action against Defendant in Delaware Superior Court. (C.A. No. 25-167-GBW, D.I. 1-1 at 2) Plaintiff subsequently filed the instant case in this court on December 31, 2024. (D.I. 2) Plaintiff's Superior Court action was removed to this court on February 11, 2025 and assigned Civil Action No. 25-167-GBW. After the court denied Defendant's motion to dismiss in Civil Action No. 25-167-GBW, the parties agreed to dismiss the action and allow the instant civil action to proceed. (C.A. No. 25-167-GBW, D.I. 11; D.I. 18)

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322–23. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). The court must draw all reasonable inferences in favor of the nonmoving party without weighing the evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## III. DISCUSSION

As an initial matter, the court acknowledges that Plaintiff is representing herself *pro se* and views her court filings liberally. *See Cyrus v. Hogsten*, 2007 WL 88745, at *6 (M.D. Pa. Jan. 9, 2007); *see also Erickson*, 551 U.S. at 94 ("[H]owever inartfully pleaded, [a *pro se* party] must be held to less stringent standards than formal pleadings drafted by lawyers."). Notwithstanding Plaintiff's *pro se* status, the court will not consider material in Plaintiff's

answering brief generated by an Artificial Intelligence ("AI") legal research tool, such as hallucinated cases or actual cases in which Plaintiff cites to non-existent or misquoted language. "AI can generate a legal proposition that appears to come from a judicial opinion and is even properly cited under The Bluebook Uniform System of Citation; but there is just one problem—it's not real. AI made it up. And those who rely on AI blindly, do so at their own peril." *OTG New York, Inc. v. OTTOGI Am., Inc.*, 2025 WL 2671460, at *2 (D.N.J. Sept. 18, 2025). Accordingly, the court will not consider Plaintiff's citation to "*Mitchell v. Crescent Directional Drilling, LP* (2015)" or "*Johnson v. Chapel Hill Independent School District* (2018)."[7] The court could not locate any cases in state or federal court that matched the identifying information provided by Plaintiff.

Turning to the substance of the pending motion, the court addresses each of the following issues raised by Defendant: (1) whether Plaintiff may recover punitive damages and/or attorney's fees as a matter of law; (2) whether the applicable statute of limitations bars any claims based on events that occurred prior to May 13, 2023; (3) whether summary judgment is warranted on Plaintiff's claims for sex and race discrimination; and (4) whether summary judgment is warranted on Plaintiff's harassment and hostile work environment claims. Because the court recommends granting Defendant's motion for summary judgment for the reasons set forth below, the court need not reach the issues of whether Plaintiff spoliated evidence or whether the *Faragher-Ellerth* defense applies.

[7] The court located the following 1988 case from the Fifth Circuit: *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375 (5th Cir. 1988). Because Plaintiff represents that the case she intends to reference issued in 2018, the court cannot verify if the Fifth Circuit case is the one Plaintiff intended to cite.

**A. Damages**

Defendant contends that Plaintiff claims only punitive damages and attorney's fees in this case, and Plaintiff does not dispute Defendant's characterization of the requested relief. (D.I. 59 at 10-11; D.I. 61 at 3-4) Plaintiff also implicitly concedes that, as a *pro se* litigant who is not a lawyer, she may not recover attorney's fees. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991) ("The Circuits are in agreement . . . on the proposition that a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees.") (emphasis in original). Thus, the only remaining damages dispute is whether Plaintiff is barred as a matter of law from recovering punitive damages.

To recover punitive damages for claims brought under Title VII, a plaintiff must show that the defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *see Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). According to Defendant, Plaintiff's claim for punitive damages fails because Plaintiff has not shown Defendant acted with malice or reckless indifference to a violation of federal law, nor has Plaintiff shown "outrageous conduct" stemming from "an evil motive." (D.I. 59 at 10) (citing 42 U.S.C. § 1981a; *Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 566 (D. Del. 2010)). Plaintiff responds that she may recover punitive damages because Defendant acted with malice. (D.I. 61 at 3-4) Plaintiff cites no evidence in support of her argument, and the case authority she references appears to be a hallucinated citation. (*Id.*)

"To survive a motion for summary judgment on a claim for punitive damages under Title VII, a plaintiff must point to evidence that creates a genuine issue of fact as to whether defendants acted with 'malice or with reckless indifference to [her] federally protected rights.'" *Cronin v. Martindale Andres & Co.*, 159 F. Supp. 2d 1, 8 (E.D. Pa. 2001) (quoting *Kolstad*, 527

U.S. at 530)). Although this analysis requires consideration of "the actor's state of mind" and is therefore typically reserved for the factfinder, *see Kolstad*, 527 U.S. at 535, Plaintiff has failed to establish that Defendant engaged in a discriminatory practice at all for the reasons set forth at Sections III.C and D, *infra*. Consequently, there is no underlying basis for Plaintiff's punitive damages claim.

**B. Statute of Limitations**

Citing the 300-day statute of limitations period under the DDEA and Title VII for filing a charge of discrimination, Defendant contends that Plaintiff's claims based on events that occurred prior to May 13, 2023 are time-barred. (D.I. 59 at 12-13) In response, Plaintiff argues that the four-year statute of limitations under 42 U.S.C. § 1981 should govern her hostile work environment claim. (D.I. 61 at 4-5) Defendant correctly notes that Plaintiff did not identify claims under 42 U.S.C. § 1981 in her civil cover sheet, complaint, or charge of discrimination, and a party may not raise new claims in response to a motion for summary judgment. (D.I. 62 at 1-2; D.I. 2-2 at 6; D.I. 2-3); *see Warfield v. SEPTA*, 460 F. App'x 127, 132 (3d Cir. 2012) ("A plaintiff may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment."). But Defendant also acknowledges that, "[e]ven if the Court considered Plaintiff's new 42 U.S.C. § 1981 claim relating to race discrimination, Plaintiff's claims would be unavailing[.]" (D.I. 62 at 2) Mindful of Plaintiff's *pro se* status, the court considers the entire period of Plaintiff's employment without applying a limitations bar in assessing her claims on the merits.

**C. Sex and Race Discrimination under Title VII, Section 1981, and the DDEA**

The *McDonnell Douglas* burden-shifting framework governs Plaintiff's discrimination claims under Title VII, Section 1981, and the DDEA. *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802–05 (1973) (addressing Title VII); *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267–68 (3d Cir. 2010) (addressing 42 U.S.C. § 1981); *Rodriguez v. Capital Vision Services, LLC*, 2023 WL 2018904, at *5 (D. Del. Feb. 15, 2023) (addressing the DDEA). Under the *McDonnell Douglas* framework, the plaintiff must establish a *prima facie* case of discrimination by showing that: (1) the plaintiff is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Vaughan v. Boeing Co.*, 733 F. App'x 617, 622 (3d Cir. 2018). If the plaintiff meets her burden to establish a *prima facie* case, the burden shifts to the defendant to provide a legitimate nondiscriminatory reason for the alleged adverse employment action, after which the plaintiff must demonstrate that the defendant's articulated reason is pretext. *McDonnell Douglas*, 411 U.S. at 801–04.

Plaintiff has not shown that she suffered an adverse employment action at any point during her employment. An adverse employment action occurs when discrimination is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). "Termination, failure to promote, and failure to hire all constitute adverse job actions. Similarly, actions that reduce opportunities for promotion or professional growth can constitute adverse employment actions." *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 219 (3d Cir. 2014) (internal citations omitted). However, "lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions." *Id.*

In support of her discrimination claim, Plaintiff refers to two occasions when she was asked to submit an occurrence report and/or received a write-up. (D.I. 61 at 7) But there is no

evidence that these incidents resulted in any disciplinary action affecting Plaintiff's compensation or the terms and conditions of her employment. As a matter of law, the occurrence reports do not amount to an adverse employment action. *See Walker*, 558 F. App'x at 220 ("A negative evaluation, by itself, is not an adverse employment action" absent a material change in the terms or conditions of employment).

Plaintiff separately contends that she was constructively discharged on January 31, 2024.[8] (D.I. 61 at 12) The Third Circuit has held that constructive discharge may constitute an adverse employment action. *See Embrico v. U.S. Steel Corp.*, 245 F. App'x 184, 187 (3d Cir. 2007). However, a plaintiff asserting constructive discharge must meet the heavy burden of showing that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (internal citations and quotation marks omitted). The Third Circuit "employ[s] an objective test and thus an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge." *Id.* The court considers several factors, "including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Id.* at 170 (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010)).

The evidence of record does not support Plaintiff's subjective characterization of her resignation as a constructive discharge. On January 25, 2024, Defendant sent Plaintiff a letter

---

[8] Plaintiff's allegations of constructive discharge factor into her Title VII claims, but "constructive discharge is not a standalone claim." *Doe v. New Castle County*, C.A. No. 21-1450-RGA, 2023 WL 7921367, at *2 (D. Del. Nov. 16, 2023) ("Without the conduct that violates Title VII, a constructive discharge claim cannot survive on its own." (citing cases)).

informing her that it would "accept [her] resignation effective as of Thursday February 1, 2024," only after Plaintiff exceeded the criteria for job abandonment outlined in the employee handbook and failed to provide documentation to complete the worker's compensation process.[9] (D.I. 60 at 30, 140) The letter provided Plaintiff with an opportunity to maintain her employment by responding to the letter. Instead of providing a doctor's note or indicating when she might return to work, Plaintiff stated her intention to resign. (*Id.* at 146) Plaintiff represented she was "forced" to resign, but Defendant's request for medical documentation to support Plaintiff's monthlong absence is not objectively unfair or discriminatory. *See Mandel*, 706 F.3d at 169. Consequently, the circumstances that led to Plaintiff's departure "simply do not rise to the level of intolerable conditions which would cause a reasonable person in [Plaintiff's] position to resign." *Swanson v. Northwestern Human Servs., Inc.*, 276 F. App'x 195, 196 (3d Cir. 2008).

Although Plaintiff's responses to Defendant's January 25, 2024 letter did not substantively address Defendant's concerns about her job abandonment, Defendant did not formally accept Plaintiff's resignation until March of 2024. (D.I. 61-1 at 53) Plaintiff was given another opportunity to respond and failed to do so. (*Id.*) Plaintiff's "[v]oluntary resignation is not an adverse employment action." *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 60 (3d Cir. 2019); *see also Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 213 F. Supp. 3d 951, 961–62 (E.D. Tenn. 2016) (holding that an employee's voluntary failure to report for scheduled shifts without notice did not amount to a constructive discharge).

---

[9] The evidence indicates that Plaintiff did not have sufficient accrued paid time off to cover all of her unexcused absences. (D.I. 61-1 at 47-49, 51) Plaintiff's contention that Aldrich "approved the Plaintiff's PTO to use for her work related injury" is not accompanied by a citation to the record. (D.I. 61 at 17)

Even if Plaintiff met her burden to establish a *prima facie* case of discrimination, her discrimination claims nonetheless fail under the remainder of the burden-shifting framework. The evidence shows that Defendant had legitimate, nondiscriminatory reasons for Plaintiff's purported constructive discharge because Plaintiff failed to either return to work or provide a doctor's note supporting her absences. (D.I. 60 at 136-46; D.I. 61-1 at 41-53) Plaintiff has not shown that Defendant's articulated reason is pretext. Plaintiff claims she was "discriminated against" due to her work-related injury and refers to a "hostile work environment" caused by an alleged lack of professionalism, drama, and gossip. (D.I. 60 at 146; D.I. 61-1 at 144) There is no evidence on the record tying these allegations to discrimination against Plaintiff based on her sex or her race. "At summary judgment, a plaintiff cannot rely on unsupported allegations, but most go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Consequently, I recommend that the court GRANT Defendant's motion for summary judgment on Plaintiff's sex and race discrimination claims.

### D. Harassment and Hostile Work Environment[10]

In support of her hostile work environment claims, Plaintiff refers to the court's Memorandum Opinion denying Defendant's motion to dismiss in related Civil Action No. 25-167-GBW, *McCann-Cross v. CORAS Wellness & Behavioral Health*, as well as the administrative findings of the DDOL and EEOC. (D.I. 61 at 8-9) But it is not enough to rely on the court's decision to deny the motion to dismiss because "the bar for summary judgment is

[10] Plaintiff's allegations of disparate treatment cannot support her hostile work environment claim. *See Lampkins v. Mitra QSR KNE, LLC*, 383 F. Supp. 3d 315, 329 (3d Cir. 2019) ("A plaintiff . . . cannot base her hostile work environment claim on the gender-based employment decisions that underpin her disparate treatment claim[s]." (quoting *Parker v. State of Del. Dep't of Pub. Safety*, 11 F. Supp. 2d 467, 476 (D. Del. 1998)).

higher due to the opportunity for discovery." *Clark v. New Jersey*, 2017 WL 5513689, at *8 (D.N.J. Nov. 17, 2017) (citing cases). At this stage, "a plaintiff . . . must point to concrete evidence in the record that supports each and every essential element of h[er] case." *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (internal quotations and citations omitted).

Plaintiff's hostile work environment claim rests on her allegations that: (1) she witnessed a white patient use a racial slur in reference to a minority patient on two occasions, (D.I. 61 at 19-21); and (2) Washington texted Plaintiff a link to a racially charged and/or sexually explicit Amazon listing, (*id.* at 8, 10-11). To establish a hostile work environment claim under Title VII, Plaintiff must show that: (1) she suffered intentional discrimination; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in similar circumstances; and (5) Defendant is liable for the discrimination under a theory of *respondeat superior*. *See Mandel*, 706 F.3d at 167; *see also Daughtry v. Family Dollar Stores, Inc.*, 819 F. Supp. 2d 393, 400-01 (D. Del. 2011) ("While [Section] 1981 and Title VII are separate and distinct statutes, [Section] 1981 hostile work environment claims are analyzed under Title VII standards."). Plaintiff has not established that the conduct was sufficiently severe or pervasive "to create an objectively hostile or abusive work environment" and "alter the conditions of [Plaintiff's] employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

Plaintiff relies on the Third Circuit's decision in *Castleberry v. STI Group*, 863 F.3d 259 (3d Cir. 2017) for the proposition that a single use of a racial slur may be sufficiently severe to state a hostile work environment claim. (D.I. 61 at 19-20) But *Castleberry* is distinguishable because the ruling was made on a motion to dismiss, the racial slur was used by a supervisor who

was threatening to terminate the plaintiff, and the plaintiff was subsequently terminated. *Castleberry*, 863 F.3d at 265. Plaintiff provides no evidence of a comparable impact on the terms or conditions of her employment due to the patients' isolated uses of a racial slur to refer to other patients. *See McCloud v. United Parcel Serv., Inc.*, 543 F. Supp. 2d 391, 399 (E.D. Pa. 2008) (observing that "isolated, sporadic incidents of racially or sexually charged comments do not constitute 'severe or pervasive' conduct that is actionable under Title VII."); *see also Reid v. MJ Logistics, LLC*, 2024 WL 2302320, at *10 (D. Md. May 21, 2024) (holding that a reasonable jury could not conclude the defendant subjected the plaintiff to a hostile work environment based on "sporadic occasions" of customers uttering racial slurs); *McCray v. Project Renewal, Inc.*, 2017 WL 715010, at *4 (S.D.N.Y. Feb. 22, 2017) (explaining that "the two racial slurs [the plaintiff] alleges, while unacceptable, do not plausibly allege a hostile work environment.").

Moreover, the single inappropriate text message sent by Washington does not satisfy the standard of severe or pervasive sexual harassment. Although the court must consider the surrounding context of the case, there is no evidence in this particular case to suggest that the text message was physically threatening or humiliating, rather than a "mere offensive utterance." *Harris*, 510 U.S. at 23; *see also Nitkin*, 67 F.4th at 571-72 (holding that no rational jury could consider seven identified incidents of sexually inappropriate comments to be sufficiently severe or pervasive, rather than simply "obnoxious, unprofessional, and inappropriate"). There is also no evidence to suggest that the incident interfered with Plaintiff's performance as an LPN.

Plaintiff did not identify any other specific incidents of harassment in her charge of discrimination, her complaint, or her opposition to Defendant's motion for summary judgment. (D.I. 2-2 at 6; D.I. 2; D.I. 61) Nonetheless, the court has construed all evidence in the record when considering the totality of the circumstances, including Plaintiff's account that Carmen

Morgan discussed her private sex life with Plaintiff and that a patient accused Plaintiff of selling drugs and made negative comments about racial minorities. (D.I. 60 at 160, 175-76) The evidence before the court does not support a pattern of harassing conduct, as opposed to isolated incidents. *See Nitkin*, 67 F.4th at 570 (considering the "relative infrequency" of seven comments spread over the span of more than three years); *see also Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 684-85 (E.D. Pa. 2016), *aff'd*, 769 F. App'x 57 (3d Cir. 2019) (holding that unwanted physical touching "was undoubtedly crass and unwelcome," but not severe or pervasive because incidents were "sporadic and isolated"). The conduct also lacks the requisite severity to create an objectively hostile or abusive work environment. *See Nitkin*, 67 F.4th at 572 (citing cases demonstrating the level of severity required to support a hostile work environment claim, including coerced sexual relations and unwanted physical touching). Therefore, I recommend that the court GRANT Defendant's motion for summary judgment with respect to Plaintiff's hostile work environment claims.

## IV. CONCLUSION

For the reasons discussed above, I recommend that the court GRANT Defendant's motion for summary judgment (D.I. 58), direct the Clerk of Court to enter judgment in favor of Defendant, and close this case.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874,

878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: November 3, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE